UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK PLATT,<br><br>   Plaintiff,<br><br>   v.<br><br>MARCUS & HOFFMAN, P.C.<br><br>And<br><br>STONECLIFFE OF ATWATER COMMUNITY ASSOCIATION, INC.<br><br>   Defendants. | Civil Case No:<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT – CIVIL ACTION**

**PRELIMINARY STATEMENT**

1. Plaintiff MARK PLATT ("Plaintiff"), by and through his counsel, alleges that the Defendants, MARCUS & HOFFMAN, P.C. and STONECLIFFE OF ATWATER COMMUNITY ASSOCIATION, INC., their employees, agents and successors (collectively "Defendants") engaged unfair, improper and illegal debt collection tactics in violation 15 U.S.C. § 1692 *et seq.*, the Fair Debt Collection Practices Act (hereinafter "FDCPA") and/or Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, et seq. (hereinafter "FCEUA"), which prohibits the use of false, deceptive and misleading representations in connection with the collection of any debt.

**JURISDICTION AND VENUE**

2. Jurisdiction arises and is proper under 15 U.S.C. § 1692(k), 28 U.S.C. § 1331 and 28 U.S.C . § 1367.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) and 15 U.S.C. § 1692k(d) because the acts of the Defendants that give rise to this action, occurred in substantial part, in this district.

**DEFINITIONS**

4. As used in this complaint, the terms "creditor," "consumer," "debt" and "debt collector" are defined at 15 U.S.C. § 1692a and 73 P.S. § 2270.3.

**PARTIES**

5. Plaintiff is a natural person, residing in Chester County, Pennsylvania at 515 Cliff Lane, Malvern, PA 19355, and is, at all times herein, a "Consumer" as defined by 15 U.S.C. § 1692a(3) and 73 P.S. § 2270.3.

6. MARCUS & HOFFMAN, P.C. ("HOFFMAN") is a law firm maintaining a principal office location at 326 West State Street, Media, PA 19063. HOFFMAN is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692(a)(6) and 73 P.S. § 2270.3 because it uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt and regularly engages in the collection or attempt to collect debts asserted to be due or owed to another.

7. STONECLIFFE OF ATWATER COMMUNITY ASSOCIATION, INC. ("STONECLIFFE") is a unit owners association formed in accordance with Pennsylvania's Uniform Planned Community Act, 68 Pa. C.S.A. § 5101, et seq., with a principal place of business of 1016 West Ninth Avenue, Suite 305, King of Prussia, PA 19406. STONECLIFFE operates and

manages the Stonecliffe of Atwater planned community and is a "creditor" as that term is defined at 73 P.S. § 2270.3.

## STATEMENT OF FACTS

8. Plaintiff purchased his home on or about November 10, 2021.

9. Plaintiff's home is subject to a recorded declaration of covenants, conditions and restrictions (CCR's) which require, among other things, the payment of regular common expense assessments to STONECLIFFE Association.

10. Although common expense assessments are due monthly, it was Plaintiff's regular practice at the beginning of year to tender all payment due for the year to STONECLIFFE.

11. In or about 2024, STONECLIFFE alleged that Plaintiff had a past-due balance for common expense assessments.

12. In April 2024, Defendant HOFFMAN sent Plaintiff a dunning letter attached as Exhibit A.

13. HOFFMAN is a law firm which specializes in the collection of consumer debt owed to homeowners' associations.

14. In the April letter, HOFFMAN advised Plaintiff that neither HOFFMAN nor the Association "will accept telephone calls regarding the delinquent account." The letter directed that payments be made payable to STONECLIFFE, but be mailed to HOFFMAN.

15. In or about this time, STONECLIFFE cut off Plaintiff's online access to his account with the Association, preventing him from accessing his payment history and balance with the Association.

16. Plaintiff made attempts to contact HOFFMAN and STONECLIFFE through telephone and email to obtain information about the alleged debt; however, neither defendant would communicate with Plaintiff.

17. In or about April of 2024, after Defendants refused to discuss the alleged debt with him, Plaintiff made a payment to Defendant in the amount of $720.57.

18. On May 6, 2024, HOFFMAN sent Plaintiff a second letter. Again, HOFFMAN noted its policy that "[a]ll communication with this office must be in writing." The May 6th letter advised that Plaintiff had an additional balance of $1,163.63 that was allegedly past due. A true and correct copy is attached as Exhibit B.

19. In or about May 2024, Plaintiff made an additional payment of $948.63, in a second good faith attempt to resolve the alleged balance.

20. On July 12, 2024, Hoffman sent a letter to Plaintiff. The letter acknowledged his payments but claimed that he still had a balance of $670.00 on the account. A true and correct copy is attached as Exhibit C.

21. Plaintiff continued to have questions regarding his account; however, HOFFMAN and STONECLIFFE kept with their policy of refusing to discuss the account with Plaintiff.

22. Adding to Plaintiff's confusion was the fact none of the statements sent with the dunning letters matched statements that were sent along with them. For example, in its May 6th letter HOFFMAN stated that Plaintiff owed an additional $1,163.63; however, a subsequently provided statement showed that this was false, and that his balance on May 6th (according to STONECLIFFE records) was actually only $813.63.

23. With his access to his account cut off by STONECLIFFE, unable to discuss all of the fees and charges levied by HOFFMAN, and with various account statements and records which

did not match the amounts HOFFMAN demanded in their letters, Plaintiff again tried to calculate what he allegedly owed and made another payment in July 2024.

24. On August 9, 2024, HOFFMAN sent yet another dunning letter. This time demanding an alleged past-due balance of $480.00. The letter went on to say that if the balance was not paid within ten days, HOFFMAN would commence suit and add additional legal fees and court costs. Like all prior dunning letters, this one contained the disclaimer: "TELEPHONE CALL MAY NOT BE RETURNED". A true and correct copy is attached as Exhibit D.

25. Plaintiff did continue to attempt to call and email, but the HOFFMAN never replied.

26. On or about August 28, 2024, HOFFMAN filed suit against Plaintiff on behalf of STONECLIFFE in Magisterial District Court No. 15-4-01. The suit sought a judgment in the amount of $2,340.00. This amount included accelerated common expense assessments due though the remainder of 2024.

27. A hearing on the claim filed by Defendants was held on October 31, 2024.

28. At the hearing, Defendants presented an Exhibit marked as "P2" a true and correct copy is attached as Exhibit E. Defendants passed off "P2" as though it was a business record of STONECLIFFE.

29. Unbeknownst to Plaintiff and to the court at the hearing, "P2" was actually edited by HOFFMAN to show charges which were not actually on Plaintiff's account. Specifically, the document was materially misleading in that it was edited to add an additional charge for "Assessment Acceleration" in the amount of $430 which subsequent account statements would show had not actually been charged to Plaintiff's account with the Association.

30. At the hearing, the state court found that Defendants were not entitled to the full amount of $2,596.52. Instead, the state court entered determined that Plaintiff's balance, inclusive of the accelerated assessments for the remainder of 2024, was only $1,150.00.

31. At the hearing, HOFFMAN and STONECLIFFE represented to the court and to Plaintiff that no additional fees and costs would accrue provided that Plaintiff paid the amount determined by the Court.

32. Promptly after the October 31st hearing, on or about November 8, 2024, Plaintiff tendered a check made payable to STONECLIFFE and mailed to HOFFMAN, in the amount of $1,150.00.

33. Pursuant to Section 5315(i) of Pennsylvania's Uniform Planned Community Act, 68 Pa. C.S.A. §5315(i), STONECLIFFE was required to apply the payment to Plaintiff's account.

34. Ignoring the requirements of the UPCA, Defendants refused to negotiate and apply the payment as required and mailed the check back to Plaintiff.

35. On November 18, 2024, ten days after Plaintiff's failed attempt to pay STONECLIFFE, STONECLIFFE mailed Plaintiff as statement demanding a balance due of $2,431.52. A true and correct copy of the statement is attached as Exhibit F.

36. The November statement ignored Plaintiff's attempt to pay the full amount awarded by the state court and threatened that Plaintiff's account "will be turned over to the association's attorney for collection, and additional costs of collection may be added to your account."

37. On November 26, 2024, STONECLIFFE appealed the award entered in the Magisterial District Court to the Chester County Court of Common Pleas. A true and correct copy of the Complaint in the appeal is attached as Exhibit G.

38. The complaint sought additional legal fees of $2,583.75 even though Plaintiff had attempted to pay the full amount of the prior judgment in reliance on assurances that the Defendants made at the October 31st hearing that there would be no more fees if Plaintiff promptly paid the judgment amount. In effect, Defendants were attempting to charge Plaintiff thousands in additional legal fees solely because a judge ruled against them and found that the amounts the Defendants sought at the October 31st hearing were unreasonable and not due under the association's governing documents.

39. Adding insult to injury, the Complaint filed by the Defendants sought to add additional late fees for an alleged late payment on November 15, 2024, even though Defendants had received and refused to accept Plaintiff's payment made on November 8th.

40. Defendants were not entitled to these late fees as they had knowingly received payment prior to the expiration of the November 15th grace period.

41. The complaint claimed a "statutory lien" on Plaintiff's home and falsely claimed that "[Platt] failed to render payments to the Association. . . . " This allegation in the complaint was false, as Defendants had actually received and refused payments from Plaintiff.

42. Plaintiff was forced to retain counsel to defend against the additional and unnecessary litigation filed by Defendants.

43. During the appeal litigation, in January 2025, Plaintiff sent Defendants full payment for all 2025 assessments. STONECLIFFE accepted and negotiated this payment.

44. On June 6, 2025, Defendants discontinued the appeal of the judgment.

45. Despite Plaintiff's attempt to tender to full payment of the judgment, and his timely tender of all assessments for 2025, Defendant STONECLIFFE continued to claim a past due balance from Plaintiff.

46. On October 16, 2025, STONECLIFFE sent the statement attached as Exhibit H. The statement falsely claimed a balance of due of $1,450.00 and again threatened that "additional costs of collection may be added to your account."

47. STONECLIFFE continues to refuse to discuss the account with Plaintiff and persists in blocking Plaintiff's online access to his account. Additionally, STONECLIFFE continues to assess additional fees, including late fees on the account which are not appropriate given that Plaintiff tendered all amounts found due by the state court, which included all amounts for assessments due in 2024 along with a separate check for all assessments due in 2025.

## COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 et seq.
### Plaintiff vs. Hoffman and Marcus, P.C.

48. Plaintiff incorporates paragraphs 1 through 47 as though set forth at length herein.

49. Plaintiff is a "consumer" and the assessments and fees charged by STONECLIFFE on his home is a "debt" as those terms are defined by 15 U.S.C. §§ 1692a(3) and 1692a(5).

50. HOFFMAN is a debt collector as that term is defined by 15 U.S.C. § 1692a(6) and subject to the FDCPA, 15 U.S.C. § 1692, et seq.

51. The documents provided and statements made at the October 31st hearing and in the state court complaint filed in November 2024 are communications made for the purpose of attempting to collect a debt and subject to the provisions of the FDCPA which required that they be fair and accurate.

52. HOFFMAN's aforesaid collection communications were false, misleading and deceptive statements that violated 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10) of the FDCPA.

53. In the alternative, HOFFMAN's aforesaid collection communications were unfair and unconscionable means of debt collection violated 1692f and 1692f(1).

54. Congress enacted the FDCPA in part to eliminate abusive debt collection practices by debt collectors.

55. Plaintiff has a right to be free from abusive debt collection practices by debt collectors.

56. Plaintiff has suffered harm, including significant emotional distress, as a direct result of the abusive, deceptive and unfair collection practices described herein.

57. Plaintiff has suffered damages, including the forced payment of amounts which were not due and owing under threat of suit and/or lien foreclosure and other harm as a direct result of HOFFMAN's actions, conduct, omissions and violations of the FDCPA described herein.

## COUNT II

**FAIR CREDIT EXTENSION UNIFORMITY ACT, 73 P.S. § 2270.1, et seq.**
**Plaintiff v. Marcus & Hoffman, P.C.**
**and Stonecliffe of Atwater Community Association, Inc.**

58. Plaintiff incorporates paragraphs 1 through 57 as though set forth at length herein.

59. Plaintiff is a "consumer" and the alleged past-due assessments and other alleged fees and charges are a "debt" as those terms are defined by 73 P.S. § 2270.3.

60. HOFFMAN is a "debt collector" as that term is a defined by 73 P.S. § 2270.3.

61. STONECLIFFE is a "creditor" as that term is a defined by 73 P.S. § 2270.3.

62. Plaintiff justifiably relied upon the statements made by STONECLIFFE in the CCR's and other governing documents of the association that STONECLIFFE would abide by the community's governing documents and Pennsylvania's Uniform Planned Community Act.

63. HOFFMAN engaged in unfair and deceptive acts and practices prohibited by Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.4(a).

64. STONECLIFFE engaged in unfair or deceptive acts or practices prohibited by 73 P.S. §§ 2270.4(b)(5), 2270.4(b)(5)(ii), 2270.4(b)(5)(x), and 2270.4(b)(6)(i).

65. As a result of the unfair and deceptive acts and practices utilized by DEFENDANTS, Plaintiff incurred financial losses and continues to suffer as Defendants improperly continue to claim a statutory lien on Plaintiff's home and threaten additional fees and legal action against him.

66. Section 2270.5 provides that the Defendants' violations of the FCEUA "shall constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law." See 73 P.S. § 2270.5(a).

67. Section 201-9.2(a) of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-9.2(a), provides for treble damages and an award of reasonable attorney fees and costs.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury on all issues so triable.

## **PRAYER**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(a) Awarding Plaintiff statutory damages;

(b) Awarding Plaintiff actual damages;

(c) Awarding Plaintiff treble damages;

(d) Awarding pre-judgment interest;

(e) Awarding post-judgment interest.

    (f) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses; and

    (g) Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: October 31, 2025

/s/ Sean P. Mays
Sean P. Mays, Esq. (I.D. No. 307518)
The Mays Law Firm, P.C.
65 W. Street Road, Suite B102
Warminster, PA 18974
(215) 792-4321 telephone and fax